CASE 6—ACTION BY F. D. HUSSEY AGAINST GEORGE W. SARGENT AND·
OTHERS FOR A CONSTRUCTION OF THE WILL OF D. P. HUSSEY, DE--
CEASED.—JUNE 16.

# Hussey v. Sargent and Others.

116   53
118   304

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION NO. 1.

FROM THE JUDGMENT THE PLAINTIFF AND THE GUARDIAN AD LITEM
OF THE INFANT DEFENDANTS APPEAL. AFFIRMED ON PLAINTIFF'S.
APPEAL AND APPEAL OF THE GUARDIAN AD LITEM DISMISSED.

WILLS—CONSTRUCTION—VALIDITY—CONFLICT OF LAWS—TESTATOR'S.
DOMICILE—RULE AGAINST PERPETUITIES—FOREIGN EXECUTOR—AC-·
COUNTING—JURISDICTION.

Held:   1. A testator, after making special bequests, bequeathed to·
his wife two-fifths of the income of the remainder during her
life, to his son two-fifths thereof, and from the remaining one-
fifth he directed that his executors should pay his sister $500·
annually for her life, and that the balance of such one-fifth
should be "allowed to accumulate for the benefit of" grandchil-
dren, and directed that "such accumulation and such income"
should be "equally divided and paid to and distributed among"·
the grandchildren when a designated grandchild should arrive
at the age of thirty-five years, or would have been thirty-five
had she lived. The testator made no further disposition of this
one-fifth. HELD, to bequeath to the grandchildren, not only the·
income of this one-fifth, but also the principal thereof.
2. The validity of a will disposing of personal property only is de--
termined by the law of the testator's domicile.
3. Under the laws of New Hampshire, the domicile of a testator dis-·
posing of personalty only, the provision in his will directing
that a certain portion of his estate shall be allowed to accumulate
for the benefit of his grandchildren, and that such accumulation
and income shall be equally divided among them when a desig-
nated grandchild, two years old at the date of testator's death,.
arrived at the age of thirty-five years, does not violate the rule·
against perpetuities, but the direction for accumulation will be·
enforced for a period of twenty-one years after the testator's
death, and then the amount accumulated will be distributed
among the grandchildren.

4. Where an executor appointed in New Hampshire is domiciled in Kentucky and is in possession of the testator's property, none of which is in New Hampshire, the courts of Kentucky may require him to account to the persons entitled to the estate.

BOYLE & YEAMAN, FOR APPELLANT.

The impracticability of requiring an accounting is well illustrated by this case. It is impossible for the court in Kentucky to bring before it the parties in interest, and the city of Nashua, which claims a legacy of $50,000, is not in any way before the court, and can not be brought before it, and the questions which will arise on this claim will necessarily arise and be determined in the courts of New Hampshire. That city will undoubtedly seek to enforce the payment of the legacy. But how can it enforce it if the courts of Kentucky seize and distribute the estate, and what protection can it be to Webster P. Hussey, the foreign executor, who is not before the court, that a court in Kentucky has assumed jurisdiction to settle the estate?

It is submitted that the decree should be reversed.

### SYNOPSIS.

1. Order entering the appearance of the infant appellees should be set aside. Barrett v. Godshaw, 12 Bush, 592-599.

2. It is not the function of a guardian *ad litem* to pray an appeal or cross-appeal. Civil Code, secs. 35, 36, 37, 38, 391, 745; Williamson v. Johnson, 4 Mon., 253; Jameson v. Moseley 4 Mon., 414; Hanna v. Spott's Heirs, 5 B. Mon., 362; Walker v. Smyser, 80 Ky., 633; Speak v. Mattingly, 4 Bush, 310; Moss v. Hall, 79 Ky., 40.

3. The cross-appeal ought to be dismissed, because it does not properly bring before the court parties intended in the question sought to be raised by it. Smith's Admr. v. Northern Bank, 1 Met., 575, 580; Gaar v. Lou. Banking Co., 11 Bush, 180, 191; Home Ins Co. v. Gaddis, 3 Rep., 159, 163; Miller v. Miller, 7 Rep., 359; Worthington v. Covington, 10 Rep., 363, 364; Overby v. Rogers, 12 Rep.. 289, 290; McKay v. Mayers, 17 Rep., 827, 828; Marion National Bank v. Phillips, 16 Rep., 159 160; Callahan v. Carr, 1 A. K. Mar., 22; Murphy v. O'Reilly, 78 Ky., 263.

1. The principal of that portion of Daniel Hussey's estate, the income of which was to be accumulated and distributed among his son's children when Emily should become thirty-five years of age, if living, was not disposed of by the will, and passes to Daniel Hussey's heir-at-law. Augustus v. Seabolt, 3 Met., 155; Byers v. Byers, 6 Dana, 314; Traphogen v. Levy, 45 N. J. Eq., 452; Gulick's Extrs. v. Gulick, 27 N. J. Eq., 498.

2. The provision directing the accumulation of income and its distribution to his son's children when Emily should reach the age of thirty-five, or would have reached that age, if living, is void, because it violates the rule against perpetuities.   If such bequest embraced the principal to be distributed likewise, then it is for the same reason also void.   Gray on Perpetuities, secs. 672, 369, 374; Jarman on Wills, p. 749, 797; Willett's Admr. v. Rudder's Admr., 84 Ky., 317; Comb's Devisees v. Branch, 4 Dana, 548; Roberts' Extr. v. Brinker, 4 Da., 570; Briscoe's Devisees v. Wickliffe, 6 Da., 158; Hocker v. Gentry, 3 Met., 463; 1 Perry on Trusts, secs. 379, 380, 381, 382, 393; Fosdick v. Fosdick (Mass.), 6 Allen, 41; Lord Southampton v. Hereford, 2 Ves. & B. 54; Stewart v. Cockrell, 7 L. R. (Eq), 363; Smith v. Smith, L. R., 5 Ch. Div., 342; Bentinck v. Duke of Portland, 7 Ch. Div., 693; Seaman v. Wood, 22 Beav., 591; Hagen v. Hale, L. R., 3. Ch. Div., 643; Manston v. Carter, 12 N. H., 162; Downing v. Wehring, 19 N. H., 85; Gen. Stats., chap. 63, art. 1, sec. 27; (Ky. Stats., sec. 2360); Gast v. Wilhite, 2 Da., 170; Moore v. Howe, 4 Mon., 199; Brashear v. Macey, 3 J. J. Mar., 89; Stevens v. Stevens, 21 Ky. Law Rep., 1315; Edgerly v. Barker, 66 N. H. 434; 28 L. R. A. 328; Rolfe Asylum v. Lefebre, 69 N. H. 238; 45 Atl. R. 1087.

3.' The chancellor erred in decreeing an accounting in this. action by the executors and trustees who qualified in New Hampshire.  Vaughn v. Northup, 15 Pet. 1; Byers v. Macauley, 149. U. S. 608; Fletcher's Admr. v. Sanders, 7 Da. 345; Fay v. Haven, 3 Mich. (Mass.) 109; U. S. v. Hailey, 3 Pac. R. 263; Woodruff v. Young, 43 Mich. 551; 6 N. W. Rep. 85; Burton v. Williamson (Neb. 1902), 88 N. W. Rep. 765; Story's Conflict of Law, Sec. 513.

JAMES QUARLES, GUARDIAN AD LITEM FOR INFANT APPELLEES.

The large interests involved in this case forbid an apology for the extended argument submitted in this brief.  Its length however, suggests the propriety of concluding it with a concise resume of the propositions discussed.

If the writer has accomplished his purpose he has established:

A.   That this will is governed by, and is to be interpreted according to, the law of New Hampshire, the testator's domicile.

B.   That the grandchildren were intended by the testator to take the corpus or capital that yields the income given them as well as the income.

C.   That the trust for accumulation for the benefit of the testator's grandchildren is valid for two alternative reasons, viz.:

1.   Because the grandchildren have a vested interest in the income and in the capital from which the income is derived, and,

therefore, the rule against perpetuities has no application whatever to this case.

2. Because if the rule against perpetuities is applicable, the trusts for the grandchildren are nevertheless enforceable under the cy pres doctrine as that doctrine is recognized and adopted by the Supreme Court of New Hampshire in the case of Edgerly v. Barker, 66 N. H. The case just referred to is in line with the cy pres principle as that principle has been incorporated into the jurisprudence of other States and countries, notably England, the New England States, Pennsylvania and New York.

D. That the grandchildren were intended by the testator to be residuary legatees of all that part of his estate not otherwise specifically disposed of—this according to clauses 9 and 10 of the will; that in the residuary estate will be included, principally, (1) the accumulations directed to be made for the benefit of the grandchildren, if those provisions of the will are void, for in case of a void legacy the property goes to the residuary legatee, if there be one, and not to the next-of-kin; (2) the capital or corpus yielding the income directed to be accumulated for the grandchildren, in the event the court should not determine that such capital as well as the income was intended by the testator to be taken by the grandchildren; (3) the $50,000.00 conditional bequest to found a library at Nashua, N. H., should the conditions imposed not be complied with by that city; (4) the $100,000.00 given F. D. Hussey by the 8th clause of the will conditioned upon his surviving his mother, should he die before his mother.

E. That the motion of the appellant to dismiss the cross-appeal granted the infant appellees should be overruled.

1. Because it has always been the practice of this court to recognize appeals taken and prosecuted by guardian ad litem. If a guardian ad litem has authority to take an original appeal (and of necessity he must have such authority else a judgment adverse to an infant could never be gotten to the court of appeals for review), then such guardian has the same authority to pray and prosecute a cross-appeal, between which and an original appeal there is no substantial difference.

2. Because the scope of the guardian ad litem's responsibility and duty under the code requires that he take all affirmative steps, as well as defensive measures, needful for the proper protection of the infant's interests involved in the litigation. The counter-claim interposed on behalf of the infants in this case was proper.

It is asked that the judgment be affirmed on the original appeal; that appellant's motion to dismiss the infant appellees' cross-appeal be overruled, and that there be a reversal on, and to the extent covered by, the cross-appeal.

Hussey v. Sargent and Others.

## AUTHORITIES.

1. The grandchildren's interest in the income is a vested one. Bank v. Ballard, 83 Ky. 481; Turner v. Patterson, 5 Dana, 296; Underhill on Wills, sec. 864; Parker v. Leach, 66 N. H., 416; Crosby v. Crosby, 64 N. H. 77; Thyng v. Lane, 69 N. H. 403; Collins v. Collins, 45 Am. Dec. 420; Converse v. Kellogg, 7 Barb. 792; Tucker v. Bishop, 16 N. Y. 404; 2 Jarman on Wills, 707.

2. The rule against perpetuities does not apply: Gray on Perpetuities, secs. 205 and 672; Lewin on Trusts, Supp., secs. 55 and 81; Josselyn v. Josselyn, 9 Sim. 63; Saunders v. Vautier, 4 Beav. 115; Hilton v. Hilton, L. R., 14 Eq. 468; Gosling v. Gosling, H. R. V. Johns. 272; Hawkin's Wills (Lewin Supp.), sec. 71; Stretch v. Watkins, 1 Madd. 143.

3. The grandchildren are entitled to the principal as well as the income. Stille's Appeal, 4 W. N. C. 42; 1 Id. 249; Thellusson v. Woodford, 4 Ves. 329; Green v. Green, 125 N. Y. 512; Finley v. King's Lessee, 3 Pet. 346; Opinion of the Justices, 66 N. H. 651; Stevens v. Underhill, 67 N. H. 71; Stratton v. Stratton, 68 N. H. 585; Page v. Eldridge Library, 69 N. H. 576; Whitcomb v. Rodman, 47 Am. St. 181; Weatherford v. Stoddard, 58 Vt. 623; Maberly v Strode, 3 Ves. 456; Mathes v. Smart, 51 N. H. 441; Traphagen v. Levy, 45 N. J. Eq. 452; Craft v. Snook's Ex., 2 Beas. 121; Gulick's Ex. v. Gulick, 10 C. E. Green, 324; Gulick's Ex. v. Gulick, 27 N. J. Eq. 498; Wainewright v. Wainewright, 3 Vis. Jr. 558; Hale v. Beck, 2 Eden, 229; Stretch v. Watkins, 1 Madd., 143.

4. If rule against perpetuities applies, trusts for the grandchildren nevertheless valid under the cy pres doctrine. Will to be construed according to law of New Hampshire. Page on Wills, Sec. 35; 3 Am. & Eng. Ency. Law, 633; Edgerly v. Barker, 66 N. H. 434; 28 L. R. A. 328; Williams on Real Prop., 240; Bouvier Law Dict., 465; Griffiths v. Vere, 9 Ves. 127; Longdon v. Simson, 12 Ves. Jr. 295; Lady Rosslyn's Trust, 16 Sim. 390; Eyre v. Marsden, 2 Keen. 564; Brown v. Williamson's Ex., 36 Pa. St. 338; Hull v. Hull, 24 N. Y. 647.

5. The grandchildren are residuary legatees. 2 Redfield on Wills, 442; Vandewalker v. Rollins, 63 N. H., 463; Jenkins v. Fowler, 63 N. H., 244; Bentley v. Kaufman, 29 Am. & Eng. Ency., 386; N., 3; Ex parte Rogers, 2 Madd., 576.

6. Chancellor should have passed on the question. 10 Ency. Pl. & Prac., 674 N., 3.

7. Motion of appellant to dismiss infant's cross-appeal should be overruled. Reed v. Lou. Bridge Co., 8 Bush, 69; Moss v. Hall, 79 Ky., 40; Brannin v. Sherley, 91 Ky., 450; Robinson v.

Fidelity, &c., Co., 11 Ky. Law Rep., 313; 10 Ency. Pl. & Pr., 729 N., 7, also 670 and 673; Thomas v. Levering, 73 Md., 461; Kentucky Code sec. 38, subsec. 3, also sec. 96; Pomeroy, Eq. Juris., sec. 1063; Bispham's Prin. Eq., secs. 371 and 479; Huhlein v. Huhlein, 87 Ky., 247; Mason v. Mason, 5 Bush, 198; Tinsley v. Tinsley, 15 B. M., 454, 459; Helm v. Bentley, 1 Met., 510.

W. O. HARRIS, AS AMICUS CURIAE FOR INFANT DEFENDANTS.

POINTS AND AUTHORITIES.

1. The law of the testator's domicil governs the construction of his will. Story's Conflict of Law, sec. 465; Wharton's Conflict of Law, secs. 570, 596; Thomas v. Tanner, 6 Mon. 59; Chapline v. Moore, 7 Mon. 175; Fletcher v. Sanders, 7 Dana, 340; Atchison v. Lindsey, 6 Mon. 86; Adams v. Adams, 11 B. M. 77; Townes v. Durbin, 3 Met. 355; 1 Jarman on Wills, p. 6; Danelli v. Danelli, 4 Bush 57; 3 Am. & Eng. Ency. 633; Gray on Perpetuities, Sec. 260.

2. The will is valid under the law of New Hampshire. Edgerly v. Edgerly, 66 N. H. 434.

3. The will disposes of the whole property. Ball v. Hancock, 82 Ky. 107; 29 Am. & Eng. Ency. 1st Ed., p. 404.

4. The court had jurisdiction to compel appellant to account. Atchison v. Lindsey, 6 Mon. 86; Adams v. Adams, 11 B. M. 77.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM.

The appellant, Frederick D. Hussey, brought this suit against the appellees, George W. Sargent, Ezekiel H. Sargent, Webster P. Hussey, Emily P. Hussey, Sr., Fannie R. Hussey, Emily P. Hussey, Jr., Catherine P. Hussey, Mabel W. Hussey, Dorothy Hussey, and Sarah L. Hussey, for the purpose of obtaining a construction of certain clauses in the will of his father, Daniel P. Hussey, who died on the 25th of July, 1883, at his domicile in the county of Hillsborough, in the State of New Hampshire, and whose will, subsequent to his death, was duly admitted to probate in the probate office of that county. He alleges that Daniel P. Hussey's widow, the defendant Emily P. Hussey, Sr., accepted the privision of his will; that he was his only child and heir at law; that at the time of the death of Dan-

iel P. Hussey he was married to Mary W. Hussey, and at that time had only one child, the defendant Emily Hussey, Jr., who was then two years old; that, after the probation of the will of Daniel P. Hussey, the defendants, Catherine, Mabel and Dorothy, children of plaintiff, were born; that, after the birth of Dorothy, his first wife, Mary W. Hussey, died, and he subsequently intermarried with the defendant, Fannie R. Hussey, but that he had no children by her. He further alleges that shortly after the death of his father, Daniel P. Hussey, he removed from the State of New Hampshire to the city of Louisville, in the State of Kentucky, with his mother and family, where they have since resided; that the debts and specific legacies of Daniel P. Hussey have all been paid, except one to a public library in the city of Nashua, which is not yet due; that the estate of Daniel P. Hussey consisted entirely of personal property, which came into the hands of the plaintiff as trustee and executor, and that he has since collected and received the entire income of the estate, and that no part of it is within the State of New Hampshire; that he was born on the 9th of August, 1857. All of the defendants, except Emily P. Hussey, Sr., and the infant children of the plaintiff, are alleged to be nonresidents, and are proceeded against as such by warning order; and it is alleged that the infant defendants have no statutory guardian, and the petition asks that a guardian ad litem be appointed to defend for them.

The special questions which we are asked to determine upon this appeal are: First, whether the principal of the one-fifth of the estate, the income of which was directed to be accumulated for the benefit of the children of plaintiff in the sixth clause of the will, has been disposed of by the will, or whether, as to this fund, testator died intestate.

Second, whether the provisions requiring that the balance of the income upon the one-fifth of testator's estate, which is directed to be distributed among the children when Emily P. Hussey, Jr., daughter of Frederick D. Hussey, arrives at the age of thirty-five years, if then living, or at that date when she would have been thirty-five years of age had she lived, being then deceased, is void as in contravention of the law against perpetuities. Third, whether or not the bequest, contained in section 8, of the remainder of two-fifths of said estate, the income of which is now payable to testator's wife during life, is a good and valid bequest in whole or in part, and, if invalid, whether such portion of the estate is or will become vested in the plaintiff or his heirs by inheritance. Fourth, whether or not the provision that the income of any portion of the said remainder be allowed to accumulate is or is not void as against the rule against perpetuities, and, if invalid, whether or not the same is or will become vested in the plaintiff or his heirs by inheritance.

In the joint and separate answer of the infant defendants, Emily P. Hussey, Jr., Catherine P. Hussey, Mabel W. Hussey and Dorothy Hussey, filed by their guardian ad litem, it is claimed that the trusts for accumulation in favor of his wards provided for in the sixth and eighth clauses of his will are valid and enforceable, and that it was the intention of the testator, Daniel P. Hussey, that these defendants or their children, should any of them die, leaving children, before the date of distribution, should under section 8 of his will receive the principal as well as the accumulated income provided for in that section. He also alleges that his infant wards were intended by testator to be the residuary legatees of any portion of the estate not otherwise disposed of in his will, and makes his answer

a counterclaim against the plaintiff for the purpose of having the rights of the infants ascertained, and requiring the plaintiff as executor and trustee to account for their shares when so ascertained. The court below held that the provisions of sections 6 and 8 of the will, providing for the accumulation and distribution of the income of Frederick D. Hussey's children at the end of thirty-three years, at which time Emily would become thirty-five years old, if living, were valid and enforceable, as was also the bequest of the principal, and adjudged that the plaintiff, Frederick D. Hussey, as trustee and executor, should file a full and complete account showing the annual income from the trust estate from the death of Daniel P. Hussey, and the sums paid by him to Jane M. Littlefield, prior to her death, under the provisions of the sixth clause of the will. To which the plaintiff excepted. The lower court declined to make any adjudication on the question as to whether or not the children of Frederick D. Hussey were entitled to take as residuary legatees that portion of the estate of Daniel P. Hussey not specifically devised by his will. To which the guardian ad litem excepted, and both the plaintiff and the guardian ad litem have appealed.

It is contended in behalf of Frederick D. Hussey: First, that the provisions contained in sections 6 and 8 of the will, for the accumulation of specific portions of the income for the benefit of his children, to be paid to them when his daughter, Emily P. Hussey, Jr., reaches the age of thirty-five, or, if she should not live that long, at such date had she lived, are void, because in contravention of the law against perpetuities, and that, being void, he, as heir at law, inherits the fund; second, that the testator has failed to dispose of the principal from which this income is derived, and that therefore, as heir at law, he is entitled to it

as intestate property. On behalf of the children it is con-
tended by their guardian ad litem that appellant is wrong
on both propositions.

In the first, second, third, fourth and fifth clauses of the
will, testator makes certain special bequests about which
there is no controversy. We copy the remaining clauses
of the will, although only the sixth and eighth are directly
involved in this litigation. They are as follows:

"Sixth. After deducting any payment of the legacies
before named, I give and bequeath to my beloved wife two-
fifths of the income of the remainder during her natural
life, and to my said son, Frederick D., I give and bequeath
a like sum to-wit: Two fifths of the income of said re-
mainder; and from the remaining one fifth of said income
I direct my executors to pay to my sister, Jane M. Little-
field, an annual sum of five hundred dollars, to commence
at my decease and payable semi-annually, and to be con-
tinued and payable during her natural life; the balance of
said one-fifth of said income shall be allowed to accumulate
for the benefit of the children of my said son or their heirs,
such accumulation and such income to be equally divided
and paid to and distributed among said children when Em-
ily P. Hussey, daughter of Frederick D. Hussey, arrives
at the age of thirty-five years if then living, or at that date
when she would have been thirty-five years of age had she
lived, being then deceased.

"Seventh. [He gives, at the death of his wife, $50,000
to the city of Nashua to establish a public library.]

"Eighth. If my said son shall survive my wife, he shall
receive at her decease the sum of one hundred thousand
dollars from my estate and shall continue to receive two-
fifths of the income of the remainder, and any remainder
income heretofore received by my said wife, shall, after

deducting such sums as to my said executors may seem reasonable and fitting for the support of the children of my said son, be allowed to accumulate for the benefit of said children conditioned as payments and distribution as in the sixth clause of the will.

"Ninth. Should my said son die before my said wife, leaving no more than two children, I give and bequeath to my sister, Jane M. Littlefield, my brother's widow, Sarah S. Hussey, and to my said half brothers, Ezekiel H. and George W. Sargent, if living, the further sum of fifteen hundred dollars, to each and all of such one surviving.

"Tenth. In case of the death of my said son before the death of my wife, leaving no children, I give and bequeath to my wife and her heirs one half part of the whole of the remainder of my estate; and the rest and remainder of said estate shall be divided into equal shares between those surviving of the following, to-wit, the widow of my son, my said sister, Jane M. Littlefield, my brother's widow, Sarah S. Hussey, and said half-brothers, Ezekiel H. and George W. Sargent.

"Eleventh. If from any cause my wife should be dissatisfied with the foregoing provisions of this will relative to her share, and should elect to receive such share or distributive part as the statutes provide, waiving the provisions herein set forth, and in lieu of the same, then I order and direct that my said son shall receive one half of the income of the remainder of said estate instead of two-fifths as set forth in section sixth. And I further order and direct that my said son shall receive on his arriving at the age of forty years the principal sum of which he shall have received the income as provided in the. preceding sections.

"Twelfth. I hereby constitute and appoint Webster P. Hussey of said Nashua, and my said son, Frederick D. Hussey, executors of this my last will and testament, hereby revoking any and all former wills by me made, and I hereby authorize and empower my said executors to sell or exchange my estate when same shall be deemed best and advisable and for the interest of said estate by my said executors, but no such change shall be made in said estate except sanctioned by both of said executors; further directing that no bonds are or shall be required of them as such executors. I also direct that all necessary expenses shall be paid to said executors incurred in the execution of the provision of this will, but that said son shall receive no further compensation for his services in the same. But I direct that said Webster P. Hussey shall receive in addition to such necessary expenses a sum not exceeding at any time (besides expenses) the sum of five hundred dollars per annum, and at no time shall said sum so received exceed two per cent. of the income of said property then in care and trust of said executors, and when such percentage on the income as aforesaid would be less than five hundred dollars, then he shall receive and be allowed such sum as would be two per cent. on said income, and such sums so allowed to Webster P. Hussey shall be in full settlement and compensation for his services while acting and serving as such executor.

"In witness whereof I have hereto set my hand and seal this twenty-first day of June, 1883, and interlineations in section seven and eight were made before signing.

"Daniel P. Hussey.

"Signed, sealed, published and declared . . . said Daniel Hussey as and for his . . . and testament in the presence of us, who at his request and in his presence and

in the presence of each other have subscribed our names
as witnesses thereto.

> "Chas. W. Hoitt.
> "Ira Gustine.
> "Mark G. Wilson."

That wills must be sustained, and the intention of the
testator given effect by courts whenever it can be done
without violating established rules of law or some public
policy, is a truism so often repeated that it has become
trite.  But it expresses a rule which is applicable to the
construction of every will when its validity or that of any
part of it may be called in question.  And when one under-
takes to make a will it will be presumed that his purpose
is to dispose of his entire estate, and does not intend to
die intestate or become intestate after death.  And courts
are never disposed to put such construction upon a will as
would be likely to lead to intestacy, and this inclination
is most strong when it is a residue of personalty which is
the subject of the bequest.  See Maberley v. Strode, 3 Ve-
sey, 456; Whitcomb v. Rodman, 28 L. R. A., 149, note: "And
if the reading of the whole will produces a conviction that
testator must necessarily have intended an interest to be
given, and which is not bequeathed by express and formal
words, the court must supply the defect by implication. See
Phelps v. Phelps, 143 Mass., 570 [10 N. E., 452]." So far
as we are able to discover, there is nothing in any clause
of this will which indicates an intention on the part of the
testator that any part of his estate should under any cir-
cumstances be treated as intestate.  After providing for
the payment of certain specific bequests, he divides the en-
tire remainder of his estate into five equal parts, and specifi-
cally disposes of each of these parts.  In the sixth clause of

his will he gives the income on two-fifths of this remainder
to his son, the appellant, without restriction. In the elev-
enth clause he provides that when he arrives at the age of
forty years he shall receive the principal of this two-fifths,
and, as appellant has passed the age of forty years, no
question can rise as to this two-fifths remainder. He then
gives the income on two of the other fifths of his estate
to his wife for life, and in the eighth clause of his will pro-
vides that if his son should outlive his mother he shall re-
ceive therefrom $100,000 in addition to the two-fifths al-
ready devised to him; and testator then provides in clause
8 that his executors may deduct such sums as may seem
reasonable to them from the income of the remainder of
this two-fifths of his estate, on which his wife during her
life had drawn the income, for the support of his grand-
children, and that any remainder of income from this two-
fifths shall be allowed to accumulate for the benefit of the
grandchildren, conditioned as to payment and distribution
as in the sixth clause of his will. In the ninth clause he
provides for an additional bequest to his brothers and sis-
ters of $1,500 in the event his son shall die before his wife,
leaving only two children. In the tenth clause he provides
for the distribution of his estate in case his son dies before
his wife, leaving no children, and in the eleventh clause
he provides for the contingency of his wife renouncing the
provision made for her in the will and claiming dower.

We will not consider the disposition made by testator
in the sixth clause of the will of the remaining one-fifth
of his estate. Out of the income of this one-fifth, testator
directs that his executors shall pay his sister, Jane M.
Littlefield, annually during her life, $500, and that the bal-
ance of the income on this one-fifth shall be allowed to accu-
mulate for the benefit of his grandchildren or their heirs,

and that such accumulations and income should be paid
to them when his granddaughter Emily was thirty-five years
of age, or would have been had she lived. It must be con-
ceded that, in order to sustain the bequest of the prin-
cipal of this one-fifth interest of the estate, we must be-
lieve that testator intended and has attempted to make
such a bequest. It is clear from the entire will that testa-
tor intended that the bulk of the estate, after the death
of his widow, should go for the benefit of his son and his
grandchildren, and that, distrusting the improvidence of
youth, he postponed the time when both his son and his
grandchildren could take possession of the principal of his
estate devised to them, until they had acquired the dis-
cretion which is the usual accompaniment of more mature
years. The provisions in the will for the benefit of the wife
and son of the testator are clear, definite and explicit.
There is not the slightest intimation that testator intended
that either of them should take by inheritance as well as
by bequest. And we think it is equally clear that he intend-
ed that his grandchildren should take the entire accumu-
lations of the one-fifth of his estate devised in the sixth
clause of his will, subject, however, to the annuity in favor
of his sister, Mrs. Jane M. Littlefield, during her life. It
is contended for appellant that the words "accumulations"
and "income" are synonymous, and both refer to the pre-
mium or interest which may be realized upon the prin-
cipal of this one-fifth of testator's estate, and neither has
any reference to the principal of the one-fifth. It must be
conceded that in its ordinary use the word "accumulations"
is used in this sense, but in law it has a more definite and
technical meaning. Black, in his Law Dictionary, defines
its legal meaning as follows: "When an executor or other
trustee masses the rents, dividends, or other income which

he receives, treats it as capital, invests it, makes a new capital of the income derived therefrom, invests that, and so on, he is said to accumulate the fund. And the capital and accrued income thus procured constitute accumulations." We are satisfied that the testator used the word "accumulations" in this sense. He plainly intended that this particular fund should grow; that the surplus income, after payment of the annuity of $500 to his sister, should be added to the principal, and become a part of the capital from year to year; and that in this way a fund should be accumulated from the capital and accrued income for the benefit of his grandchildren. There is another well-settled rule of construction that would give the principal of this one-fifth to the grandchildren. The testator nowhere provides that it shall go to any one else, or fall into the residue of his estate, and where the interest of a fund is bequeathed to a legatee or in trust to him, without any limitation as to the continuance, the principal will be regarded as bequeathed also. See Craft v. Snook's Ex'rs, 13 N. J. Eq., 121, 78 Am. Dec., 94; Gulick's Ex'rs v. Gulick, 25 N. J. Eq., 324; Wainright v. Wainright, 3 Ves. Jr., 558; Hale v. Beck, 2 Eden, 229. We are therefore of the opinion that testator's grandchildren took not only the income, but also the principal, of the one-fifth of the estate.

We will now proceed to the consideration of appellant's second contention, that the provision directing the accumulation of income and its distribution to the grandchildren when Emily should arrive at the age of thirty-five years, or would have reached that age if living, violates the rule against perpetuities. Mr. Perry, in his work on Trusts (5th Ed., vol. 1, section 381), says that: "In determining whether a particular devise is contrary to the rule

against perpetuities, the inquiry is not whether the contingency upon which the estate is to vest actually occurs within the time limited by the rule, but whether it is possible that the event may not happen within the time. If it is possible that the event upon which the executory devise, or shifting or springing use, is to vest in some person, may not happen within the time, the executory estate is void, although in fact the event actually happens within the time." Underhill on the Law of Wills (vol. 2, sections 883, 886) is to the same effect. And this view was adopted by this court in Stevens v. Stevens, 21 R., 1315, 54 S. W., 835; Coleman v. Coleman, 23 R., 1476, 65 S. W., 832. Undoubtedly this provision of the will under our statute against perpetuities would be held void, but this being the will of a testator who died domiciled in New Hampshire, which disposes alone of personalty, it must be construed according to the law of New Hampshire. On this point, Judge Story, in his work on Conflict of Laws (section 465), says: "It is now a well-settled principle in the English law that a will of personal property, regularly made according to the law of the testator's domicile, is sufficient to pass such property in every other country in which it is situated." Page on Wills, section 35, says: "Where a bequest of personalty creates a trust, its validity is primarily to be determined by the law of the domicile of the testator, not the law of the place where the property is situated." On the same subject, Mr. Wharton, in his Conflict of Laws (section 570), says: "By the English common law, as held both in England and the United States, testamentary capacity as to personalty is governed by the law of the domicile of the testator at the time of his death." And this rule has been followed by this court in numerous decisions. See Chapline v. Moore, 23 Ky., 175; Fletcher's

Adm's. v. Sanders, 37 Ky., 345, 32 Am. Dec., 96; Townes
v. Durbin, 60 Ky., 355, 77 Am. Dec., 176; Dannelli v. Dan-
nelli's Adm'r., 67 Ky., 57. Indeed, we do not understand
that this proposition of law is controverted by appellant.
It therefore remains to be determined whether the bequest
at the time it took effect was in conflict with the law of
New Hampshire, the domicile of testator.

It appears from the evidence that there is no statutory
provision in New Hampshire against perpetuities, and that
the common-law rule prevails there, except in so far as it
has been modified by the decisions of the Supreme Court of
that State. The common-law rule required that every inter-
est disposed of by will should vest within a life or lives
in being at the creation of the estate, and twenty-one years
and ten months thereafter. See Blackstone's Com., 174; 2
Minor's Institutes, 376, 377. And it is clear that, tested by
the restrictions of the common law, the devise in this clause
to testator's grandchildren is void because it postpones
the enjoyment of the income for a period of thirty-three
years, which is longer than the time allowed by the common-
law rule. But the Supreme Court of New Hampshire, in
1891, in their decision in Edgerly v. Barker, 66 N. H., 434,
31 Atl., 900, which is also reported in 28 L. R. A., 328, modi-
fied that rule of the common law as to perpetuities in a
very important particular. In that case the testator de-
vised the remainder of his estate to trustees, who were to
pay fixed sums to the testator's two children for life, with
remainder of the estate over to testator's grandchildren,
born and unborn, and to be paid to them when the youngest
should arrive at forty years of age, and upon their giving
bond to the children of the testator for the payment of the
support provided for them in the will. At common law
this restriction in the vesting of the estate would have ren-

Hussey v. Sargent and Others.

dered the devise void, but the court sustained it by modi-
fying the provision so as to make the gift take effect when
the youngest child reached the age of twenty-one years in-
stead of forty, upon the theory that the controlling idea
of the testator was that his grandchildren should have the
remainder of his estate, and that the postponement of this
devise until the youngest child was forty years old was
secondary and subordinate, and that the court would not
permit the plain intent of the testator that his grandchil-
dren should have the estate to be defeated by the provision
that it should not take effect until the youngest was forty
years old.    The edition, of the Lawyers' Reports Anno-
tated, in a note appended to this case, says: "The applica-
tion of the *cy pres* doctrine to a gift which is not charitable,
so as to save it substantially, when the time of distribu-
tion fixed by the will is unlawfully remote, is somewhat
unusual, but the opinion in the above case presents much
authority for the essential principle involved." And, wheth-
er the decision in that case be sound or not, it is conceded
to be the law of New Hampshire, under which the validity
of the devise in this case must be determined.

It is very earnestly insisted for the appellant that the
difference between this case and the Edgerly case is so
marked as to except it from the rule announced in the Ed-
gerly case.    The basis of this contention is that in the
Edgerly case the beneficiaries were known, and the limita-
tion was only as to the time when the estate should pass,
whilst in this case the persons who are to take can not be
known until his grandchild Emily should arrive at the
age of thirty-five, or would arrive at that age provided she
is alive.    And in support of this contention appellants have
taken the deposition of a distinguished lawyer and citizen
of New Hampshire, who, in answer to a request by appel-

lant to point out the distinctions between this case and the Edgerly case, said: "In the Barker case, as the bequest would not take effect until all the grandchildren were born and the youngest became twenty-one, the same persons would receive the property as would have taken it at the end of forty years. No change of the beneficiaries could have been made by the court's action, whilst in the Hussey case the vesting of the estate at the end of twenty-one years instead of thirty-three years would cut off any grandchildren born during the twelve-year period, a change of the beneficiaries would have been made by the court's action, and the testator's primary purpose altered." Upon cross-examination, the witness was asked this question: "Mr. Senator, I think it appears from the report of the Barker case that at the date that case was decided by the Supreme Court, or at least at the time when testator died, the testator's son was thirty-five years old and the son's wife was thirty-two years old, and they were approximately at these respective ages at the time the case was decided. Assuming that to be true, suppose that a child was born to that couple after the decision of the Supreme Court of New Hampshire in the Barker case; in your opinion, would that child share with other grandchildren in testator's estate, or would he or she be cut off? Answer, I think they should be cut off, because the estate could not vest until twenty-one years after his birth, and such a limitation after life not in being or gestation when testator died would be void. What the court meant as to unborn children not then in gestation, I can not discover. As a matter of fact, I suppose there were none." Question 17, "Then in the Barker case there was a possibility of a grandchild being born who could not share in the testator's estate; that is a fact, is it not? Answer. Yes, if that

was the purpose of the court in that case. Possibly the court intended that all of the unborn children should be reckoned and the property vested at the end of twenty-one years from the birth of the youngest child, whenever born. If so, this would tend to impeach the soundness of the decision in Edgerly v. Barker, but would not alter the fact that there was no possibility of change in the beneficiaries by cutting the limitation from forty years to twenty-one years. Question 18. Has the decision in Edgerly v. Barker been overruled or modified? Answer. Not that I am aware of."

It seems quite plain that in Edgerly v. Barker the court put the period of distribution at the time when the youngest child then living became twenty-one years of age, so that there was a possibility in that case that other children might be born after that time who would be excluded. So, after all, it seems to us that it is impossible to distinguish on principle this case from that, and that, following the doctrine laid down in that case, the chancellor properly decided that the provision of the will directing the accumulation of the income was valid and enforceable for a period of twenty-one years after testator's death, and should be carried out by the trustee, and that two-fifths of the income, to be accumulated under the eighth clause of the will after the death of testator's widow, stands upon the same footing as the one-fifth directed to be accumulated under the sixth clause of the will, with the exception that the support for the children is to be deducted from the income derived from this interest, and that both funds go to the grandchildren in twenty-one years after the probation of the will of Daniel P. Hussey.

The third ground relied on for a reversal is that the chancellor erred in requiring an accounting in this action by

the executor and trustee, as he qualified as such in the
State of New Hampshire and received the estate by virtue
thereof, and appellant has cited numerous authorities to
support his contention that an executor can not be sued out
of the jurisdiction of his appointment for a failure to carry
out the trust imposed upon him. But the law on this ques-
tion has long been settled against his contention in this
State by numerous adjudications of this court. In the
early case of Dorsey's Executor v. Dorsey's Adm'r, 28 Ky.,
280, 22 Am. Dec., 33, it was held that a distributee of a
decedent might enforce distribution, in the courts of this
State, of assets received by the administrator appointed
in Maryland, if found in this State. This was followed by
Atchison's Heirs v. Lindsey, 45 Ky., 86, 43 Am. Dec., 153,
in which the administrator and infant heirs of John At-
chison sought to recover of James Lindsey, who adminis-
tered upon the estate of decedent in South Carolina, cer-
tain assets received by him in that State. The contention
was made in that case that, as Lindsey was appointed ad-
ministrator in South Carolina and received the assets sued
for there, he could not be held responsible in the tribunals
of this State for the surplus remaining in his hands at the
suit of a local administrator and infant heirs of decedent.
In response to this contention, after referring to Dorsey's
Executor v. Dorsey's Adm'r, the court said: "Upon express
authority of this case, and upon our own sense of what is
required by convenience and justice, and of the comity due
sovereignty and laws of South Carolina, we are of the opin-
ion that the mere fact that Lindsey was appointed admin-
istrator in that State and received there the assets for which
he is now charged, does not of itself exempt him from all
liability to be sued in tribunals of this State for a claim
growing out of his having thus received assets, to the pro-

ceeds of which the complainants or some of them are en-
titled. Whether any decree should finally be rendered
against him on this account may depend upon the facts
disclosed in his answer, and upon the proof; but we think
he was bound to answer." The question was again before
this court in Manion's Adm'rs v. Titsworth, 57 Ky., 597,
and in a well-considered opinion by Judge Simpson it was
decided "that it was settled doctrine in this State that the
administrator or executor who is appointed or who quali-
fied in another State and there receives assets in his hands,
may be sued in the tribunals of this State by persons en-
titled to such assets, if he shall have removed to and set-
tled in this State." The question was again before the
court in Keiningham v. Keiningham's Ex'r, 24 R., 1330, 71
S. W., 497, and the doctrine was reaffirmed. Appellant
avers that his domicile is in this State, that the property
disposed of by the sixth and eighth clauses of the will of
testator are in his possession and under his control, and
that no part of it is within the State of New Hampshire.
It is manifest that the New Hampshire courts could not
enforce any decree for a settlement of appellant's accounts
unless he voluntarily came within their jurisdiction, and
that, under the decisions quoted supra, the courts of Ken-
tucky have jurisdiction both of him and the property re-
ceived by him under the will of testator for the purpose
of requiring an accounting at his hands. We therefore
conclude that the court did not err in so adjudging. In
our opinion the trial court properly declined to pass upon
the question raised by the guardian ad litem as to who
were intended by testator to be the residuary legatees of
any portion of his state not otherwise disposed of by his
will.

76          KENTUCKY REPORTS.          [Vol. 116

People's Elec. Light & Power Co. v. Capital Gas & Elec. Light Co.

For reasons indicated, the judgment upon the original appeal is affirmed, and the cross-appeal prayed by the guardian ad litem dismissed, and the cause remanded for proceedings not inconsistent with this opinion.

Whole court sitting.

Petition for rehearing by appellant overruled.